# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

EMMANUEL A. N. THOMAS,

   Plaintiff,

  v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT; and D. RAY JAMES
CORRECTIONAL FACILITY,

   Defendants.

CIVIL ACTION NO.: 5:13-cv-126

---

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Emmanuel A. N. Thomas ("Thomas")[1], who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Mandamus and a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[2] (Doc. 1.) Respondents filed a Response. For the reasons which follow, it is my **RECOMMENDATION** that Thomas' Petition be **DISMISSED** and this case be **CLOSED**. I also **RECOMMEND** Thomas be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

## BACKGROUND

Thomas is serving a 181-month sentence based on his convictions obtained in the Southern District of Florida for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). (Doc. 14-2, p. 10.) Thomas has a projected release date from the Bureau of

---

[1] Thomas was convicted under the name "Emmanuel Ambrosio". (Doc. 14, pp. 1–2 n.1.)

[2] Thomas' pleading is entitled "Order for Petition Writ of Habeas Mandamus U.S. Citizenship Adjustment Status Claim Declaratory Judgement, Enjoin Injunctive Relief Stay of Removal Deportation Pending Appeal Determination". (Doc. 1.)

Prisons' ("BOP") custody of April 28, 2020.  (Id.)  The Bureau of Immigration and Customs Enforcement ("ICE"), formerly the Immigration and Naturalization Service ("INS"), issued a detainer against Thomas on April 25, 2012.  (Id. at p. 16.)

DISCUSSION

Thomas asserts he is a native and citizen of Haiti by birth, but he is entitled to United States' citizenship by virtue of his status as a stepchild to a United States citizen prior to attaining the age of eighteen (18).  (Doc. 1, pp. 1–2.)  Thomas seeks an order terminating the removal proceedings and the ICE detainer.  (Id. at p. 3.)  Thomas maintains the ICE detainer affects his public safety factor, which will prevent him from being released to a halfway house and from gaining entry into the early release program in the future.  Thomas contends the ICE detainer results in him having to serve more time and a harsher sentence than he would ordinarily have to serve without the detainer being issued against him.  (Id. at pp. 6–7.)

Respondents set forth several reasons why Thomas' Petition should be dismissed, which the undersigned addresses in turn.[3]

I.      **Failure to Exhaust Administrative Remedies**

Respondents assert that, to the extent Thomas asserts the detainer is precluding him from receiving certain benefits at D. Ray James Correctional Facility, those claims should be dismissed because Thomas failed to follow the Bureau of Prisons' grievance procedures. Respondents' assertion requires the Court to examine exhaustion principles under Section 2241.

---

[3] Respondents assert they are not Thomas' custodian and should not be named Respondents in this case. The Court agrees with this assertion.  Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]").  Accordingly, Immigration and Customs Enforcement and D. Ray James Correctional Facility should be **DISMISSED** as the named Respondent and **REPLACED** with "Warden, D. Ray James Correctional Facility" as the sole Respondent.  The Clerk of Court is **DIRECTED** to add "Warden, D. Ray James Correctional Facility" as a Respondent upon the docket of this cause of action.

"[P]risoners seeking habeas relief, including relief pursuant to [28 U.S.C.] § 2241," must exhaust all available administrative remedies. Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004). If a petitioner fails to exhaust his administrative remedies before seeking redress in the federal courts, the court should dismiss the case for want of jurisdiction. Winck v. England, 327 F.3d 1296, 1300 n.1 (11th Cir. 2003) (citing Simpson v. United States, 959 F.2d 211, 212 (11th Cir. 1992)). "Also jurisdictional is '[t]he general rule . . . that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.'" Id. (quoting Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001)).

In Porter v. Nussle, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. 534 U.S. 516, 523 (2002). The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 548 U .S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91.[4] In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

---

[4]  Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures.[5] (Doc. No. 14, p. 4.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Doc. 14-1, p. 4.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP related matters.[6] (<u>Id.</u> at p. 5.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (<u>Id.</u>). If an inmate files an administrative remedy concerning a BOP related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. <u>Pichardo</u>, CV511-69, 2011 WL 5102814, at *2.

In this Petition, Thomas asserts that the ICE detainer is preventing him from participating in certain programs, such as potential release to a halfway house and an early release program. (Doc. 1, p. 7.) Thus, this assertion concerns a BOP-related matter, which must be addressed through the BOP's grievance procedures before it can be brought in this Court. A review of Thomas' administrative history reveals he has only filed one administrative remedy, which was filed on February 18, 2011, and in which Thomas requested dental care. (Doc. 14-2, p. 24.) Thomas failed to raise his claim that he is being denied access to certain programs as a result of the ICE detainer through the BOP grievance procedure. Therefore, Thomas' contention that he

---

[5] The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James Correctional Institution. (Doc. 14, p. 4.)

[6] Examples of BOP related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release upon successful completion of the RDAP. <u>Pichardo v. Zenk</u>, CV511-69, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (Oct. 26, 2011).

is being denied access to certain programs is due to be **DISMISSED**, without prejudice, based on Thomas' failure to exhaust his administrative remedies.

## II.      Whether the ICE Detainer Constitutes Custody for Section 2241 Purposes

Respondents assert removal proceedings have not been initiated against Thomas, and the ICE detainer does not constitute "custody" for Section 2241 purposes.  As a result, Respondents maintain, Thomas' Petition should be dismissed because this Court lacks jurisdiction pursuant to Section 2241.  (Doc. 14, p. 7.)

"Under certain circumstances, challenges to detainers may . . . be brought under § 2241."[7]  Roberts v. INS, 372 F. App'x 921, 924 (11th Cir. 2010) (alteration in original) (internal citation omitted).  The Eleventh Circuit Court of Appeals has held that the filing of a detainer, standing alone, does not cause a prisoner to come within the custody of the Department of Homeland Security ("DHS") or ICE.  Oguejiofor v. Attorney Gen. of the United States, 277 F.3d 1305, 1308 n.2 (11th Cir. 2002); Orozco v. United States Immigration & Naturalization Serv., 911 F.2d 539, 541 (11th Cir.1990);. This position is in accord with several other Courts of Appeals.  See e.g., Zolicoffer v. United States Dep't of Justice, 315 F.3d 538, 539 (5th Cir. 2003); Garcia v. Taylor, 40 F.3d 299, 303–04 (9th Cir. 1994); Santana v. Chandler, 961 F.2d 514, 516 (5th Cir. 1992); Prieto v. Gulch, 913 F.2d 1159, 1162 (6th Cir. 1990); Mohammed v. Sullivan, 866 F.2d 258, 260 (8th Cir. 1989). "The underlying rationale of these courts is that a detainer, as distinguished from other [ICE] orders, does not put a 'hold' on" the individual. Ryan v. Dep't of Homeland Sec., No. 3:09cv399/LAC/MD, 2010 WL 1433166, at *1 (N.D. Fla.

---

[7]  "A detainer serves to advise another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). "The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." Id.

Mar. 8, 2010); accord Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) (noting that, the lodging of a detainer, without more, is insufficient to render the alien "in custody").

Generally, a detainer is viewed as "an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release." Id. (internal citation omitted). "In the immigration context, a detainer usually serves only as a notice to prison authorities that . . . ICE is going to be making a decision about the deportability of the alien in the future." Id. (citing Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988)). "The reasoning follows that the detainer does not serve to establish conclusively either present or future restraints on the prisoner's liberty." Id. "Because there is no actual claim to the individual following the completion of his criminal sentence, there is no custody." Id.

The Court concludes that Thomas is not "in custody" of ICE for purposes of Section 2241 simply by way of the detainer ICE lodged against him before the time he filed his petition. The undersigned notes Thomas does not contend that ICE served him with an order to show cause or a final deportation order or that there was some other reason he should be considered to be in the custody of ICE. See Alanis-Bustamonte v. Reno, 201 F.3d 1303, 1309 (11th Cir. 2000) (a show cause order, in combination with a warrant on a detainer, are prerequisites to formal commencement of removal proceedings). Because Thomas is not "in custody" of ICE by virtue of the detainer, this court lacks subject matter jurisdiction under 28 U.S.C. § 2241 to address his claim. Consequently, this portion of Thomas' Petition should be **DISMISSED**.

## III.    Citizenship Claims

Respondents aver Thomas has not exhausted his request seeking a declaration of citizenship through the appropriate agency and he is not in removal proceedings, and, therefore,

he cannot raise a claim that he is entitled to derivative citizenship by virtue of his stepfather being a United States citizen. Respondents note Thomas has filed a Form N-600, Application for Certificate of Citizenship, with the United States Customs and Immigration Service, but that form was not filed until April 4, 2014, and the status of Thomas' application could not be ascertained at the time of Response. (Doc. 14, p. 8.) Thus, Respondents maintain, this Court lacks jurisdiction over Thomas' citizenship claim.

"Where an official's authority to act depends upon the status of the person affected, in this case eligibility for citizenship, that status, when in dispute, may be determined by a declaratory judgment proceeding after the exhaustion of administrative remedies." McGrath v. Kristensen, 340 U.S. 162, 169 (1950) (cited in Roberts v. INS, 372 F. App'x 921, 925 (11th Cir. 2010)). In McGrath, the United States Supreme Court concluded that the petitioner could bring a Section 2201 declaratory judgment action to determine citizenship status because the Attorney General's refusal to suspend deportation was a final administrative decision.

However, in Roberts, the Court determined that the petitioner could not bring a declaratory judgment action because the petitioner's immigration proceedings had not yet begun. Specifically, even though the Department of Homeland Security ("DHS") had denied Roberts' naturalization application, Roberts had not challenged that denial before an immigration officer. Additionally, even though DHS issued a detainer for Roberts, Roberts had not received a Notice to Appear commencing removal proceedings. As a result, the district court in Roberts lacked jurisdiction to entertain Roberts' nationality claim. Similarly, this Court lacks jurisdiction to hear Thomas' citizenship claim because "it is clear on the face of [Thomas'] complaint that immigration proceedings [have] not yet begun[.]" Roberts, 372 F. App'x at 925.

To the extent Thomas seeks to bring a derivative citizenship claim, he cannot do so at this time. However, the Court is mindful that inmates can bring derivative citizenship claims under certain conditions. See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003). In the first instance, an inmate begins by filing an application for certificate of citizenship with DHS. 8 C.F.R. § 341.1. If this application is denied, the inmate may file an appeal with the Administrative Appeals Unit ("AAU"). 8 C.F.R. §§ 322.5(b) and 103.3(a). If the AAU denies the appeal, then the applicant may be able to file an action in district court seeking declaratory judgment on his derivative citizenship claim. 8 U.S.C. § 1503(a); Ortega v. Holder, 592 F.3d 738, 744 (7th Cir. 2010) (noting that an individual can establish nationality pursuant to Section 1503 once an administrative application for a certificate of citizenship has been denied); Nelson v. United States, 107 F. App'x 469, 470–71 (6th Cir. 2004) (stating that Section 1503(a) requires a final administrative denial before a declaratory judgment action may be instituted). In those instances in which "an application for a certificate of citizenship has been denied and the time for appeal has expired, [the United States Customs and Immigration Service] will reject a subsequent application submitted by the same individual and the applicant will be instructed to submit a motion to reopen or reconsider[.]" 8 C.F.R. § 341.5(e).

The second instance in which judicial review of a derivative citizenship claim is appropriate occurs "[w]here an individual is subject to removal proceedings, and a claim of derivative citizenship has been denied" as part of such proceedings. Henriquez v. Ashcroft, 269 F. Supp.2d 106, 108 (E.D.N.Y. 2003). In this circumstance, review is properly sought "before the appropriate court of appeals, not a district court." Id. (citing 8 U.S.C. § 1252(b)(5)). Moreover, regardless of whether a claim of derivative citizenship is made following an application for a certificate of citizenship or in conjunction with removal proceedings, all

available administrative remedies must be exhausted before a federal court has subject matter jurisdiction to review the claim. 8 U.S.C. §§ 1503(a) & 1252(b)–(d); Sundar v. INS, 328 F.3d 1320, 1323–24 (11th Cir. 2003) (noting that the exhaustion requirement is jurisdictional and applies equally to habeas corpus proceedings).

Thomas has not shown that he exhausted the proper administrative remedies before filing this cause of action. In addition, Thomas has not shown that deportation proceedings against him have begun[8] or that his citizenship application has reached finality. In short, this Court is without jurisdiction to entertain Thomas' citizenship claims. For these reasons, this portion of Thomas' petition should be **DISMISSED**.

It is unnecessary to address Respondents' assertion that any challenge to the ICE detainer is not ripe. Respondents noted that, if the Court finds jurisdiction to review any of Thomas' claims, his case should be dismissed "for lack of prudential ripeness." (Doc. 14, p. 11.) As the Court has found no jurisdictional basis to entertain Thomas' claims, such a challenge by Respondents is moot.

## V. Leave to Appeal *In Forma Pauperis* and Certificate of Appealability

The Court should also deny Thomas leave to appeal *in forma pauperis,* and he should be denied a Certificate of Appealability ("COA"). Though Thomas has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Thomas v. Crosby, 371 F.3d 782, 797 (11th Cir. 2004) (Tjoflat, J., specially concurring) ("A

---

[8] Respondents assert under a separate section in their Response that this Court lacks jurisdiction to enjoin future removal proceedings, in the event Thomas' derivative citizenship claim is denied. (Doc. 14, p. 10.) The Court need not address this argument separately because, as noted in the body of this Report, a court of appeals is the proper venue in which to seek review of any future deportation proceeding. See also 8 U.S.C. § 1252(a)(5) (a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter). However, the Court notes Thomas can bring a Section 2201 declaratory judgment action in a district court on a derivative citizenship claim after he exhausts his administrative remedies. 8 U.S.C. § 1503(a).

district court may *sua sponte* grant or deny a COA at the same time it rules on the merits of a habeas petition or rejects it on procedural grounds. This is arguably the best time for a district judge to decide this matter because the issues are still fresh in [the district court's] mind."); Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal); Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued. A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell,

537 U.S. 322, 336 (2003). In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Thomas' petition and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Thomas' Petition for Mandamus and Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), be **DISMISSED** and this case be **CLOSED**. I further **RECOMMEND** that Thomas be **DENIED** leave to proceed *in forma pauperis* on appeal and a Certificate of Appealability.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Thomas and Respondents.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 28th day of August, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA